AO 91 (Rev 11/11) Criminal Complaint (approved by AUSA J Bologna

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

United States of America
v.
Ajith Bhaskaran
*Defendant(s)*

Case No. 19-1885-m

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of July 17, 2017 in the county of Philadelphia in the Eastern District of Pennsylvania, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18, United States Code, Section 1343 | The defendant, having devised a scheme or artifice to defraud or to obtain money or property by means of false or fraudulent pretenses, representations, or promises, transmitted or caused to be transmitted by means of wire in interstate commerce, a writing for the purpose of executing such scheme or artifice |

This criminal complaint is based on these facts:

See Affidavit

☑ Continued on the attached sheet.

*Complainant's signature*

James Harper, Senior Special Agent
*Printed name and title*

Sworn to before me and signed in my presence

Date: November 8, 2019

*Judge's signature*

City and state: Philadelphia, PA

Elizabeth T Hey, U S Magistrate Judge
*Printed name and title*

19-1885-m

**AFFIDAVIT**

1. I, James E. Harper, am a Senior Special Agent with Amtrak Office of Inspector General. I have personally participated in this investigation and am aware of the facts contained herein based upon my own investigation of the conduct of defendant AJITH BHASKARAN (hereinafter "BHASKARAN"). BHASKARAN is Amtrak employee. He is the Program Manager for Amtrak's Engineering Major Capital Construction in the Mid-Atlantic Region. He works in Philadelphia, Pennsylvania, in space adjacent to 30th Street Station.

2. The Inspector General Act of 1978 (Public Law 95-452, 5 U.S.C. Appendix 3), as amended in 1988 (P.L. 100-504), established the Office of Inspector General ("OIG") for Amtrak to consolidate investigative and audit resources into an independent organization headed by the Inspector General to promote economy, efficiency, and effectiveness; and to detect and prevent fraud, waste, and abuse, and investigate criminal allegations of misconduct that could affect Amtrak programs, operations, assets, or resources.

3. I submit this affidavit in support of a complaint and warrant for the arrest of BHASKARAN for a violation of 18 U.S.C. § 1343. I discovered this criminal violation, which occurred in 2017, during my investigation of BHASKARAN on another matter. Where necessary, I have referenced my investigation of the other matter to explain how and why I discovered evidence that BHASKARAN has violated 18 U.S.C. § 1343.

**Anonymous Letter**

4. On or about March 13, 2018, Amtrak Office of Inspector General received an anonymous letter stating the following:

> *"I would like to bring to your attention to some ethical and possible criminal behavior by one of your employees. The person in question is Mr Ajith Bhaskaran (Amtrak project manager). I am currently a worker at the Philadelphia 30th street exterior façade project I have firsthand knowledge or been given credible evidence of Mr. Bhaskaran involving himself in*

*1) Requesting or in some cases demanding expensive dinners from the contractors This has happened countless times.*

*2) Instructing contractors to disregard Amtrak rules His rules are the only ones that matter.*

*3) Having contractors buy equipment. Paid for out of the construction budget for his personal use Usually electronic items.*

*4) Please look in his strange relationship with a company he hired at the one-year mark of the project. Vega Solutions which I believe is the company's name. By all accounts their only responsibility is to be the eyes and ears for Mr. Bhaskaran. At which point he started to drive a new Ford Explorer with out of state tags*

5) *Has mislead upper management in the real happing's or progress of the project "*

**Vega as a Vendor to Amtrak**

4. Your affiant conducted a search of Amtrak's Spend Management system, named "Ariba," for any contracts with a vendor named Vega Solutions. This search revealed Vega Solutions, Inc., (hereinafter "Vega") and a vendor # 0004045575. Vega has a business address of 14312 Autumn Gold Road, Boyds, Maryland 20841. When I searched using Vega's vendor number, I found three different Blanket Purchase Orders (hereinafter "BPO") with Amtrak. The BPO numbers are 1003504, 1002617, and 1003889.

- BPO #1003504 was related to an Independent Contractor-Professional Services contract with Amtrak's Engineering Program Management Office (hereinafter "PMO") located at 1801 Market Street, Suite 1450, Philadelphia, Pennsylvania. Vega contractors listed under this BPO # are Bhavesh Rathore (hereinafter "Rathore"), Peter Jermak, Weyingme Jemegbe, Tushar Madaan and James Ellsworth. Rathore was added as a contractor on June 2, 2016. His job description notes "Contractor will provide professional scheduling services to support multiple programs and projects including but not limited to the Gateway

Program, East Side Access, NYDOT Double Track, NJ High-Speed Rail improvements, New Haven-Hartford-Springfield Double Track programs among others as well as general scheduling support including monthly schedule updating assistance for the New York Division, Empire Corridor and Northeast/New England Division."

- BPO #1002617 was related to an Independent Contractor Services with Amtrak's Engineering PMO located at 1801 Market Street, Suite 1450, Philadelphia, Pennsylvania. Vega contractors listed under this BPO # are Sandeep Hardikar and Madan Singh.
- BPO #1003889 was related to adding additional funds for Vega Contractor Rathore, who was noted above.

5. Your affiant also searched within Ariba for all purchase requisitions (hereinafter "PR") created by Bhaskaran that were linked to Vega. My search revealed PR#2000744735 for "Construction Management Support for the 30th street Façade restoration Project." This PR was created on November 2, 2015, for $3,000,000. Bhaskaran wrote in comments section:

> "CM services sought for supporting the Project Manager throughout the duration of the 30th street station façade restoration project. This project is a multi year project with a projected 2018 completion. The expected role of the CM is described in the attached CM Scope of work. Responsibility matrix within the CM Scope will provide a spot light on the role of CM in this porject [sic]. The anticipated expenses per year is approximately USD 1 Million. We arrived at this approximate for a full time CM PM, Project/Office Engineer, one day time inspector and sporadic night time inspector."

6. On August 25, 2016, Vega was awarded contract #9500001655 for Construction Management Services in support of Amtrak's 30th Street Station Façade Project and Fire Alarm System. The total amount of the contract was $1,309,040.06.

**Bhaskaran's Use of Amtrak's Computer System**

7. On March 30, 2018, your affiant requested an email pull of the account, Ajith.Bhaskaran@amtrak.com. In May of 2018, your affiant requested that Computer Target System "PHLJ76153," which was assigned to Bhaskaran, be imaged. In particular, I was interested in searching for communications and activity between Bhaskaran and Vega contractor Rathore.

8. The aforementioned computer is linked to Amtrak inventory and routinely located on Amtrak property, specifically the address of 2929 1/2 Arch Street, Philadelphia, Pennsylvania. This areas sits adjacent to 30th Street Station. The computer is routinely connected to the Amtrak business network and is configured with the Amtrak standard business image containing a click-through user consent access banner. In order for Bhaskaran to log onto his Amtrak-issued computer, he is required to click through the banner which states:

> "Access and use of this system is restricted, monitored and recorded. By using Amtrak owned and supported computer systems I acknowledge that I [have read], am subject to, and bound by, all of Amtrak's policies regarding computer usage, information security and records management and specifically Amtrak policy 3.1x information technology security and usage policy. I acknowledge that all electronically stored information created or utilized through Amtrak's computer systems are considered property of Amtrak and may only be used and distributed in accordance with Amtrak policies. I acknowledge that connecting to the Amtrak network through personal computer equipment is a privilege granted by Amtrak and that there is reduced expectation of privacy for such use and privilege. Abuse of such privileges may subject my personal computer equipment to legal holds and/or physical possession by Amtrak. Amtrak has a right but not a duty to monitor and access all electronic communications. Access or use of this system without authorization and/or in violation of Amtrak's policies may lead to disciplinary action up to and including termination, possible criminal prosecution and potential personal liability for your actions."

This banner advises Bhaskaran that access and use of Amtrak's system is restricted, monitored and recorded. Furthermore, the banner states that by using the computer, Bhaskaran acknowledges that he has read and is subject to and bound by all Amtrak policies regarding

computer usage, information security and records management, specifically Amtrak Policy 3.1.3 Computer Security & Usage. Finally, the banner states that Amtrak has a right, but not a duty, to monitor and access all electronic communications connecting to its network.

9. As part of Amtrak's hiring process, on December 18, 2013, Bhaskaran signed and dated an Acknowledgement of Receipt of Amtrak Policy, Computer Security and Usage Policy, 3.1.3, which states "I have read the policy statement concerning the misuse of Amtrak's computer systems and network." Your affiant reviewed the OIG Computer Forensics unit email capture for Bhaskaran's internal Amtrak email account Ajith.Bhaskaran@amtrak.com, as well as the imaged copy of Bhaskaran's assigned computer. My review of the email account and computer revealed the evidence that supports this affidavit, complaint, and warrant.

**The Fraud**

10. On July 20, 2017, an email from Ajith.Bhaskaran@amtrak.com to Bhavesh.Rathore@amtrak.com forwarded a message that included an attachment of ten pages regarding a "NEW JERSEY REALTORS STANDARD FORM OF RESIDENTIAL LEASE." The lease was for the property located at "305 Covered Bridge Rd, Cherry Hill, New Jersey" with tenants listed as both BHASKARAN and Rathore. The original forwarded message was sent on July 20, 2017, from james.nicoludis@foxroach.com to ajitsharmaamtr@gmail.com. That message had the subject "Fwd: Message from CR13." In that message James Nicoludis (hereinafter "Nicoludis") wrote: "Ajit, Attached is the scan of the lease. Get it back to me as soon as you can. Talk soon." Nicoludis's email signature had the following information: "Sales Associate, REALTOR, Berkshire Hathaway Home Services, Fox & Roach, REALTORS 1401 Rt 70 E Cherry Hill, NJ 08034." Your affiant understood these messages as follows. The real estate agent (Nicoludis) was forwarding a standard residential lease form to BHASKARAN and

asking him to complete it. BHASKARAN and Rathore were both listed on the lease; accordingly, BHASKARAN forwarded the document to Rathore for his signature.

11. On July 21, 2017, an email from Bhavesh.Rathore@amtrak.com to Ajith.Bhaskaran@amtrak.com included an attachment titled "lease." In the message, Rathore wrote "Please find attached." The attachment was the same 10-page lease agreement as described in the above paragraph. However, Rathore's signature now appeared on page 8 of the lease, with the date July 21, 2017. Your affiant understood this message to mean that Rathore signed and dated the lease, returning it to BHASKARAN.

12. On October 16, 2018, U.S. Magistrate Judge Carol S.M. Wells signed a warrant authorizing the search of email address ajitsharmaamtr@gmail.com. This is BHASKARAN's email address at Google. The Google subscriber information for this account is as follows: "Name: Ajit Sharma, created on 2014/02/02, SMS: +12127293295 with google account ID: 232202244239."

13. A subpoena was served on T-Mobile for subscriber information regarding #2127293295. Records provided by T-Mobile revealed that the subscriber's name is Ajith Bhaskaran, activation date of 8/19/2011, account #823460577, birth date: 05/30/1964 and SSN: 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. A check of Amtrak's SAP system (a Human Resources database) using BHASKARAN's name confirmed the DOB and SSN associated with the T-Mobile account matches the DOB and SSN information Amtrak has for BHASKARAN.

14. Your affiant reviewed the search warrant production received in November 2018 from Google. I looked for email communication referring to the lease agreement for BHASKARAN and Rathore to reside at 305 Covered Bridge Rd, Cherry Hill, New Jersey.

15. Your affiant saw that on July 10, 2017, Nicoludis emailed ajitsharmaamtr@gmail.com with subject: "rental docs." Nicoludis attached several documents and wrote:

> "Ajit, These are forms that will need to be processed at some point before you sign a lease. 2 of them are very important. First is the Credit Summary Request (also call the NTN). It's used to grade your tenancy and costs $30 per tenant. There are instructions on it that tell you whom to make the payment to. I'll need a check to submit the request. The other form I need to accompany the NTN is the Application for Rent. Fill out everything except for the top part that asks about the property address. We can put it in later. I'll get the other forms from you at a later time but the 2 described above are critical to the process."

16. Your affiant saw that on July 13, 2017, Nicoludis emailed ajitsharmaamtr@gmail.com with subject: "Re: rental docs." Nicoludis wrote "Ajit, I have received the NTN report and it looks great with a score of 96. As soon as I get the pay stubs, I can put in the rental application. Once the landlord Oks everything, we'll receive the lease to sign. Talk soon." Your affiant understood the July 10th and July 13th emails to demonstrate that Nicoludis was assisting BHASKARAN and Rathore to complete the necessary rental paperwork. Part of that process involved the renters "proving" they had sufficient income to qualify as tenants; on the face of their application, it appeared BHASKARAN and Rathore were both planning to move into 305 Covered Bridge Road.

17. Your affiant saw that on July 17, 2017, an email from ajitsharmaamtr@gmail.com to james.nicoludis@foxroach.com had a subject of "Re: rental docs" and an attachment "DOC071717." Bhaskaran wrote "reference Lee Maniatis 312 617 8596 Thomas Maclaughlin 513 403 4259 Kelly Dallo 248 755 1967 Don Seefeldt 312 617 8595." Your affiant reviewed the attachment "DOC071717."

18. DOC071717, which I have included as ATTACHMENT A, was a TD Bank statement for a checking account for "BHAVESH RATHORE 65 N 34TH ST. APT #3B,

PHILADELPHIA, PA 19104" with the statement period "May 26-Jun 25 2017." The Customer Ref #, Primary Account # and Account # are all blacked out with what appears to be a black marker. However, your affiant was able to see the last four digits of "4855" under the Account # section (even though it was blacked out). There is a variety of financial information listed under the Account Summary, Daily Account Activity, and Daily Balance Summary Sections of this document. I now believe, based on the information I describe below, that his document is fraudulent. In particular, I believe Rathore did not have this account at TD Bank, and further, I believe an account statement from BHASKARAN's TD Bank Account was modified and used to create the appearance that Rathore did have this account at TD Bank. I base these beliefs on the following evidence.

19. Your affiant searched Bhaskaran's assigned Amtrak-issued computer for any documentation related to a TD Bank account for Rathore. Your affiant located a TD Bank statement of BHASKARAN's account for the period June 7, 2017, through June 25, 2017. I have included that document as ATTACHMENT B. A Bates number (USA000765) appears on the bottom right corner of ATTACHMENT B; that Bates number was inserted by law enforcement. The financial information detailed on ATTACHMENT B is remarkably similar to the financial information detailed on ATTACHMENT A. The remarkable similarities linking ATTACHMENTS A and B include the following: (a) on June 23rd, there was an $8,000 deposit; (b) on June 9th, there was a $100 electronic deposit; (c) on June 19th, there was a $15.33 electronic payment at Shoprite in Cinnaminson, New Jersey; and (d) on June 22nd, there was a $10.69 electronic payment at Kentucky Fried Chicken (KFC). Your affiant believes the consistency of the dates, the amounts of money deposited or spent, and the places of these

transactions, has only one reasonable explanation: ATTACHMENT B was modified to create ATTACHMENT A.

20. On ATTACHMENT B, the Customer Reference Number is 4327074855-630-T, the Primary Account # is 432-7074855, and the Account # is 432-7074855. All of these numbers are clearly visible. As previously noted, your affiant saw the last four digits of the account number on ATTACHMENT A (although blacked out) were 4855. As such, the account numbers on ATTACHMENT A and B appear to match, even though they are supposed to correspond to different customers' accounts. A comparison of these documents led your affiant to conclude that BHASKARAN's TD Bank statement was modified to create the fraudulent impression that Rathore had this account, was depositing funds into this account, and had funds available to pay the rent at 305 Covered Bridge Road.

21. To confirm my conclusion, your affiant issued a subpoena to TD Bank for all accounts for BHASKARAN and Rathore. Your affiant received and reviewed the returns. The returns for Rathore showed that he did not have an account # ending in 4855 in his name at TD Bank. The returns for BHASKARAN confirmed he had account # 4327074855. This account was opened on June 7, 2017, with a corresponding DOB of 5/30/1964, SSN of 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, and home phone of 212-729-3295.

22. Your affiant is familiar with Google account location history data. That information is presented in longitude and latitude format with a time and date stamp showing when and where the data was collected. Latitude 39.9533 and Longitude -75.1697 with a time stamp of 19:12 UTC (15:12 EST) was found in the Google Account Location history for the ajitsharmaamtr@gmail.com account. A review of this detailed information confirmed that BHASKARAN was physically at 1801 Market Street in Philadelphia, which is a business

address called Ten Penn Center. Amtrak has office space in the business center, and Rathore has assigned work space at 1801 Market Street in Suite 1450. A review of Rathore's Amtrak-issued email Bhavesh.Rathore@amtrak.com shows him working at the time BHASKARAN sent the email with the fraudulent attachment (ATTACHMENT A) to the real estate agent.

23. Your affiant knows that BHASKARAN moved into, began residing, and still resides, at 305 Covered Bridge Road, Cherry Hill, New Jersey. Your affiant does not believe Rathore moved into that property with Bhaskaran. Your affiant bases this belief on the following information.

24. First, your affiant has reviewed bank records for Rathore from TD Bank and Chase from 2017 to the present. In bank records during that time-period, Rathore never listed 305 Covered Bridge Road as his home address. In summary, Rathore's Chase account lists home addresses at 65 North 35th Street, Apartment 3B, in Philadelphia, Pennsylvania (from early 2017 through May 9, 2017, and from August 9, 2019 to May 8, 2019) and 958 Camelot Court, in Cinnaminson, New Jersey (from May 9, 2017 through August 8, 2017). Rathore's TD Bank account lists a home addresses at 65 North 35th Street, Apartment 3B, in Philadelphia, Pennsylvania.

25. Second, your affiant is aware that Rathore filed an employment petition with the United States Citizenship and Immigration Service (hereinafter "USCIS") on February 21, 2019. In that petition, Rathore reported 65 North 34th Street, Apartment 2B, Philadelphia, Pennsylvania as a home address. On May 23, 2019, FBI Special Agent Kyle Wood and USCIS Officer Christopher Angelstein spoke to Rathore. In that interview, confirmed his home address was the same as what he reported on February 21, 2019. Your affiant is aware that USCIS Officer Angelstein has reviewed Rathore's immigration information, which is stored on an agency

database. Notably, the address of 305 Covered Bridge Road is never mentioned as part of Rathore's profile.

26. Third, your affiant is aware that FBI surveillance teams has conducted surveillance outside of 305 Covered Bridge Road in Cherry Hill, New Jersey, on numerous dates in 2019. Rathore was never seen during those surveillances. Based on this history, it appears to your affiant that Rathore never moved in with BHASKARAN and, as such, BHASKARAN overstated the number of people who would be paying rent in order to acquire property (305 Covered Bridge Road) that he may not have qualified for as a single renter. Further, even if Rathore did move into the property with BHASKARAN, it is clear from ATTACHMENT A and ATTACHMENT B that BHASKARAN knowingly used a fraudulent document to create the impression that he and his roommate had access to more money than they did. I also know that on June 10, 2015, Bhaskaran sent an email from his Amtrak account regarding a rental application at the Pennsauken Golf Course Villas. In that email, Bhaskaran wrote "I need to say that my credit score is very bad since my divorce in 2011[.]"

27. Your affiant's review of the website www.zillow.com demonstrates that 305 Covered Bridge Road is a three bedroom, three bathroom single-family home with 1492 square feet. The home has a driveway and garage. Your affiant noted the property was listed for sale on March 28, 2017, for $310,000. The price was reduced on May 2, 2017, to $299,900, and reduced again on June 27, 2017 to $289,900. The listing was removed on July 25, 2017. These dates correspond with the timing of the emails described above.

28. Your affiant knows, based on a review of his company's website, that Nicoludis is a Realtor for Berkshire Hathaway Home Services, Fox & Roach. Nicoludis lists a business address of 1401 Route 70 East, Cherry Hill, New Jersey.

Case 2:19-mj-01883 *SEALED* Document 1 Filed 11/08/19 Page 13 of 15

**Conclusion**

Based on the information detailed above, your affiant believes there is probable cause that BHASKARAN knowingly and willfully participated in a scheme to defraud, that he acted with the specific intent to defraud, and that he used an interstate wire communication (via the email he sent, with ATTACHMENT A) in furtherance of his scheme to acquire property. As such, your affiant requests your Honor sign the accompanying criminal complaint and warrant.

Respectfully submitted,

James Harper
Senior Special Agent
Amtrak Office of Inspector General

Subscribed and sworn to before me
This 8th Day of November, 2019

HONORABLE ELIZABETH T. HEY
UNITED STATES MAGISTRATE JUDGE