IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL NO. 20-_____ |
|---|---|---|
| v. | : | DATE FILED: _____ |
| AJITH BHASKARAN | : | VIOLATIONS:<br>18 U.S.C. § 1343 (wire fraud - 3 counts)<br>Notice of forfeiture |
| | : | |

## INDICTMENT

### COUNTS ONE AND TWO

**THE GRAND JURY CHARGES THAT:**

### INTRODUCTION

At all times relevant to this indictment:

1. The Social Security Administration ("SSA"), an agency of the United States, administered certain government benefit programs, including the Retirement and Survivor's Insurance ("RSI") benefit program, pursuant to Title 42, United States Code, Sections 401-433.

2. The RSI program was an earned-right program funded through Social Security wage taxes. When an individual worked, that individual paid taxes on his or her wages into the Social Security trust fund. If that individual paid sufficient Social Security taxes to earn sufficient "credits," as that term was defined for purposes of the Social Security Act, he or she, or eligible dependents, including spouses, were eligible to receive retirement benefits upon reaching a certain age.

3. RSI payments continued until the entitled individual died.

4. P.R. and R.K. were a married couple who, at times relevant to this indictment, lived with their daughter S.A. and her husband, defendant AJITH BHASKARAN, in Lansdowne, Pennsylvania.

5. P.R. and R.K., as retirees, received SSA retirement benefits (RSI benefit payments). SSA direct-deposited RSI payments to P.R. into a bank account set up in her name. SSA direct-deposited RSI payments to R.K. into a bank account set up in his name.

6. In or about 2003, P.R. and R.K. notified SSA that they were residing at the Lansdowne, Pennsylvania home of their daughter and defendant AJITH BHASKARAN.

7. During the time that P.R. and R.K. lived in the residence of defendant AJITH BHASKARAN, defendant BHASKARAN managed the family's finances. By managing the family's finances, defendant BHASKARAN had access to the financial records of family members, including the bank account information and SSA records related to P.R. and R.K.

8. In or about 2006, P.R. and R.K. moved out of the Lansdowne, Pennsylvania home and moved to India. Defendant AJITH BHASKARAN, who maintained the family's finances, did not notify the SSA that P.R. and R.K. no longer lived in the Lansdowne, Pennsylvania residence. Consequently, SSA continued to issue RSI payments to P.R. and R.K. as though they still lived at the residence in Lansdowne, Pennsylvania.

9. On or about March 14, 2010, defendant AJITH BHASKARAN learned that his mother-in-law, P.R., had died.

10. SSA continued to direct-deposit RSI payments into the bank account of P.R. because it had not been notified of her death.

11. On or about June 11, 2011, defendant AJITH BHASKARAN learned that his father-in-law, R.K., had died.

12. SSA continued to direct-deposit RSI payments into the bank account of R.K. because it had not been notified of his death.

13. In June 2011, defendant AJITH BHASKARAN and S.A. divorced.

## THE SCHEME TO DEFRAUD

14. From in or about March 2010 through in or about November 2019, defendant

## AJITH BHASKARAN

devised and intended to devise a scheme to defraud the SSA and to obtain money from the SSA by fraudulently converting to his own use the electronic deposits of SSA benefit payments intended for P.R. and R.K., which defendant BHASKARAN knew he was not entitled to receive.

15. It was the object of the scheme described in paragraph 14 for defendant AJITH BHASKARAN to receive approximately $187,687 in SSA payments intended for P.R. that defendant BHASKARAN was not entitled to receive, and to receive approximately $64,917 in SSA payments intended for R.K. that defendant BHASKARAN was not entitled to receive. In total, defendant BHASKARAN obtained $252,604 of SSA benefit payments he was not entitled to receive.

## MANNER AND MEANS

It was part of the scheme that:

16. Defendant AJITH BHASKARAN, who managed the family's finances, failed to disclose the 2010 death of P.R. to SSA to ensure P.R.'s benefits payments continued to be deposited in P.R.'s bank account.

17. Defendant AJITH BHASKARAN, who managed the family's finances, failed to disclose the 2011 death of R.K. to SSA to ensure R.K.'s benefits payments continued to be deposited in R.K's bank account.

18. Defendant AJITH BHASKARAN concealed from S.A. that he had failed to notify SSA of her parents 'deaths and that benefit payments continued to be deposited into their bank accounts.

19. From in or about March 2010, through in or about November 2019, defendant AJITH BHASKARAN withdrew and converted to his own use RSI benefits payments intended for P.R. and for R.K.

20. On or about the following dates, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant

**AJITH BHASKARAN,**

for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| <u>COUNT</u> | <u>DATE</u> | <u>WIRE TRANSACTION</u> |
|---|---|---|
| 1 | January 16, 2019 | SSA payment of $1,712.00 for P.R. by wire transfer from Philadelphia, Pennsylvania to Kansas City, Missouri, to East Rutherford, New Jersey, to Minneapolis, Minnesota. |
| 2 | January 16, 2019 | SSA payment of $681.00 for R.K. by wire transfer from Philadelphia, Pennsylvania to Kansas City, Missouri, to East Rutherford, New Jersey, to Minneapolis, Minnesota. |

All in violation of Title 18, United States Code, Section 1343.

## COUNT THREE

**THE GRAND JURY FURTHER CHARGES THAT:**

## INTRODUCTION

At all times relevant to this indictment:

1. From in or about July of 2017 through in or about December of 2019, defendant AJITH BHASKARAN rented a single-family residence in Cherry Hill, New Jersey.

2. A person (the "LANDLORD") owned the single-family residence, and held that legal status from on or about July 1, 2017, through on or about December 31, 2019.

3. A person (the "REAL ESTATE AGENT") assisted defendant AJITH BHASKARAN in applying for a lease of the LANDLORD's property. The REAL ESTATE AGENT worked in Cherry Hill, New Jersey.

4. On or about July 10, 2017, the REAL ESTATE AGENT sent a message to defendant AJITH BHASKARAN's personal email address with two documents to be completed. The REAL ESTATE AGENT wrote that one of the documents, a Credit Summary Request, is "used to grade your tenancy" and is "critical to the process."

5. A person (the "ASSOCIATE") known to defendant AJITH BHASKARAN agreed to assist BHASKARAN in leasing the landlord's property. The ASSOCIATE signed a residential lease falsely indicating the ASSOCIATE would live at the property and pay a portion of the rent.

6. As defendant AJITH BHASKARAN well knew, the ASSOCIATE did not intend to live at the property or pay part of the rent.

7. On or about July 17, 2017, defendant AJITH BHASKARAN sent a message from his personal email address to the REAL ESTATE AGENT's work email address containing fraudulent information, namely an attachment that purported to be the ASSOCIATE's TD Bank checking account statement (the "bogus bank statement").

8. The bogus bank statement had the account # obscured with a black marker. The last four digits of the account # are nonetheless visible.

9. The ASSOCIATE maintained a bank account with TD Bank. The last four digits of the ASSOCIATE's account number at TD Bank did not match the last four digits of the account number on the bogus bank statement.

10. Defendant AJITH BHASKARAN maintained a bank account with TD Bank. The last four digits of defendant BHASKARAN's account number at TD Bank matched the last four digits of the account number on the bogus bank statement.

11. The bogus bank statement sent by defendant AJITH BHASKARAN to the REAL ESTATE AGENT contained financial information that matched BHASKARAN's account at TD Bank. The matching information included:

    (a) on June 23rd, there was an $8,000 deposit into each account;
    (b) on June 9th, there was a $100 electronic deposit in each account;
    (c) on June 19th, there was a $15.33 electronic payment at ShopRite in Cinnaminson, New Jersey, in each account; and
    (d) on June 22nd, there was a $10.69 electronic payment at Kentucky Fried Chicken (KFC) in each account.

12. On or about July 21, 2017, defendant AJITH BHASKARAN forwarded the lease signed by the ASSOCIATE to the REAL ESTATE AGENT, despite knowing that the ASSOCIATE would not be residing in the property with BHASKARAN, thereby completing the

requisite steps to secure the lease agreement with the LANDLORD.

13. From in or about July 2017 through in or about December of 2019, defendant AJITH BHASKARAN paid monthly rent for the single-family residence in Cherry Hill, New Jersey. Some of the funds BHASKARAN used to pay rent were obtained from the SSA in the form of benefit payments intended for P.R., as described in Counts One and Two.

### THE SCHEME TO DEFRAUD

14. From on or about July 10, 2017, until on or about July 21, 2017, defendant

**AJITH BHASKARAN**

devised and intended to devise a scheme to defraud the LANDLORD to obtain a lease for the single-family residence described in Paragraph One by fraudulently representing he would live at the address with the ASSOCIATE, and by submitting a fraudulent bank statement purporting to be for the ASSOCIATE's bank account, in email communications with the REAL ESTATE AGENT.

### MANNER AND MEANS

It was part of the scheme that:

15. To overcome credit history issues that might interfere with acquiring a lease, defendant AJITH BHASKARAN misrepresented the ASSOCIATE would live in the residence and pay a portion of the rent, when in reality BHASKARAN knew the ASSOCIATE would not live in the residence and would not contribute money towards the payment of rent.

16. Defendant AJITH BHASKARAN caused the ASSOCIATE to sign a lease agreement that falsely represented the ASSOCIATE would reside in the residence and pay rent.

17. Defendant AJITH BHASKARAN forwarded this lease agreement to the REAL

ESTATE AGENT representing the LANDLORD's interests.

18. To show the ASSOCIATE's creditworthiness, defendant AJITH BHASKARAN prepared a bogus bank account statement, which purported to show the ASSOCIATE maintained an account at TD Bank and had access to the money in that fictitious account.

19. To prepare the bogus bank statement, defendant AJITH BHASKARAN used a statement from his own account at TD Bank and doctored it to appear as the statement of the ASSOCIATE's account. Defendant BHASKARAN used a black marker to obscure the account number. BHASKARAN further replaced his name and address on the statement with the name and address of the ASSOCIATE.

20. Defendant AJITH BHASKARAN forwarded this bogus bank statement to the REAL ESTATE AGENT to further the belief of the LANDLORD that BHASKARAN and the ASSOCIATE would be able to pay the rent on the single-family residence.

21. Defendant AJITH BHASKARAN used benefit payments intended for P.R., as described in Counts One and Two, to pay the rent.

22. On or about the following date, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant

**AJITH BHASKARAN,**

for the purpose of executing the scheme described above, caused to be transmitted by means of

wire communication in interstate commerce the signals and sounds described below:

| **COUNT** | **DATE** | **WIRE TRANSACTION** |
|---|---|---|
| 3 | July 17, 2017 | An email with an attachment that contained false information, that is, bogus bank account information, sent from Philadelphia, Pennsylvania to Cherry Hill, New Jersey. |

All in violation of Title 18, United States Code, Section 1343.

# NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT:**

1. As a result of the violations of Title 18, United States Code, Section 1343 set forth in Counts One through Three of this Indictment, defendant

**AJITH BHASKARAN**

shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from proceeds traceable to the commission of such offense; including but not limited to the sum of $252,604.

2. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant(s) up to the value of the property subject to forfeiture.

All pursuant to Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 981(a)(1)(C).

A TRUE BILL:

_____
**GRAND JURY FOREPERSON**

_____
**WILLIAM M. McSWAIN**
**United States Attorney**

No._____

# UNITED STATES DISTRICT COURT

Eastern District of Pennsylvania

Criminal Division

THE UNITED STATES OF AMERICA

v.

AJITH BHASKARAN

INDICTMENT

18 U.S.C. § 1343 (wire fraud – 3 counts); Notice of forfeiture

Filed in open court this _____ day,
Of _____ A.D. 20 _____

Clerk

Bail, $_____